[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-13942
Non-Argument Calendar

————————————————

D.C. Docket No. 2:16-cv-00996-ALB-WC

KENNETH THOMAS,

                                                  Plaintiff-Appellant,

versus

STERIS CORPORATION,

                                                  Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama

————————————————

(June 30, 2020)

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Kenneth Thomas, a man over 40 who suffers from a disability, appeals following the district court's grant of summary judgment in favor of his former employer, the STERIS Corporation ("STERIS"), on his claims of age discrimination, disability discrimination, and retaliation. On appeal, Thomas argues that the factual dispute over whether he was terminated or quit precluded summary judgment, and that because STERIS denied terminating him, it was estopped from providing legitimate, non-discriminatory reasons for such an action. He also argued that he made a *prima facie* case for age discrimination, disability discrimination, and retaliation.[1]

## I

Thomas was employed by STERIS as a human resources manager for nearly 40 years at its plant in Montgomery, where he was supervised, at the time relevant to this appeal, by Denis DeThomas and Mac McBride. In the district court, Thomas alleged that he was fired on account of age and disability discrimination, retaliation for requesting disability accommodations, and retaliation for protesting

---

[1] Thomas initially claimed retaliation under Title VII but omitted that in his amended complaint. He also claimed retaliation under the ADA based on his requests for accommodation but has abandoned that argument on appeal. Finally, to the extent that he independently challenged Steris's alleged refusal to accommodate his disability, the district court rejected that as well, and he only refers to "discrimination . . . arising from his termination" on appeal. Thus, he has abandoned any denial-of-accommodation claim. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

age discrimination.  STERIS, on the other hand, contended that Thomas was an incompetent employee who had lost the trust and respect of those he managed in his human resources role.

The district court summarized several episodes in Thomas's troubled employment record as follows:

> In late 2014, a decline in Thomas' performance seems to have coincided with the appointment of DeThomas as his new supervisor. In just two months, Thomas' spotless record began to fall apart.  In August, Thomas failed to attend an important corporate meeting and then, during DeThomas' first visit to the Montgomery plant, she was told by employees, including members of the leadership team, that they did not trust Thomas.  In September, Thomas attended a corporate training session but failed, not only to successfully complete the training, but also to followup with remedial education.  Thomas' unhappy fall continued when he accidentally deleted a presentation he was supposed to give at STERIS' headquarters and just days later incorrectly informed McBride as to the rates that the Montgomery plant paid independent contractors, resulting in significant embarrassment when McBride conveyed the incorrect figures to executives.  Thomas himself described the latter mistake as a "big deal."

*Thomas v. STERIS Corp.*, No. 2:16-cv-996-ALB, 2019 WL 4253847, at *1 (M.D. Ala. Sept. 6, 2019).  In response to these incidents, DeThomas conducted a "Hogan 360" survey of 28 coworkers asking for feedback on Thomas's performance. Thomas ranked in the bottom 10% of managers and had low scores in trust and building relationships.

On April 16, 2015, a meeting took place, during which Thomas alleges he was fired.  STERIS, on the other hand, contends that he was offered the choice of

3

either a (1) "transition" plan that would effectively terminate him in several months or (2) a performance-improvement plan that DeThomas explained probably would not be effective.  In any event, Thomas left the meeting and the employment relationship ended.  Thomas now asserts that whether this meeting and the end of his employment qualifies as an adverse employment action is a dispute of material fact that precludes summary judgment.

## II

"We review *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).  The question is whether the evidence, when viewed in the light most favorable to the nonmoving party, shows that "no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law."  *Id.* at 1263–64.

We may affirm summary judgment on any ground supported by the record, even if the district court relied upon an incorrect ground or gave an incorrect reason.  *Alvarez*, 610 F.3d at 1264.

The ADEA prohibits private employers from, among other things, firing an employee 40 years or older due to his age.  29 U.S.C. §§ 623(a)(1), 631(a).  The ADA precludes private employers from discriminating against disabled employees under certain circumstances.  42 U.S.C. § 12112.  Both statutes prohibit employers

4

from retaliating against employees for seeking to enforce their statutory rights. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).

"A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof." *Alvarez*, 610 F.3d at 1264 (quotation omitted). When a plaintiff relies on circumstantial evidence, he may defeat summary judgment by relying on the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarez*, 610 F.3d at 1264 (citing *McDonnell Douglas*, 411 U.S. 792). Under this framework, a plaintiff must first make out a *prima facie* case of age discrimination or retaliation under the ADEA, or disability discrimination or retaliation under the ADA. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (setting forth elements of a *prima facie* case under the ADA); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (setting forth elements of a *prima facie* case under the ADEA); *see also Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (discussing materially adverse action element of a retaliation claim); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260–61 (11th Cir. 2001) (setting forth elements of a *prima facie* case of retaliation). This usually requires the plaintiff to show he suffered an adverse employment action such as termination. *Chapman*, 229 F.3d at 1024; *Lucas*, 257 F.3d at 1260–61; *see also Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68. If he does so, and the

5

employer proffers one or more legitimate, nondiscriminatory reasons for its actions, the burden is on the plaintiff to show pretext. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

Given this burden-shifting scheme, Thomas's reliance on *Fetner v. City of Roanoke*, 813 F.2d 1183 (11th Cir. 1987), is misplaced. In *Fetner*, summary judgment was deemed improper because the issue whether a police chief resigned or was fired was material to whether he suffered a procedural due process violation under 42 U.S.C. § 1983. *Fetner*, 813 F.2d at 1186. *Fetner* is inapplicable—a § 1983 claim does not require analysis under the *McDonnell Douglas* framework. 813 F.2d at 1186. Thomas's contention that whether he was terminated or quit is a dispute of material fact precluding summary judgment fails for the same reason. The dispute is not material, because even assuming that Thomas was fired and therefore suffered an adverse employment action, he would still need to carry his burden to rebut the nondiscriminatory reasons for the termination proffered by STERIS.

STERIS argues that it articulated legitimate, non-discriminatory reasons for Thomas's termination—trust issues and performance problems—and that Thomas failed to show that these reasons were pretexts for disability discrimination, age discrimination, or retaliation, because he agreed that it was a problem if employees did not trust a human resources manager. STERIS argues that the evidence

6

showed that discrimination and retaliation were not reasons for Thomas's departure.

To show pretext, a plaintiff must show both that an employer's reasons are false "*and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). In doing so, "the plaintiff cannot recast the reason but must meet it head on and rebut it." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (quotation omitted). If the employer proffers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. *Chapman*, 229 F.3d at 1037. Specifically, the employee must produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by [the employer] were not the real reasons for the adverse employment decision." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016) (quotation omitted). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext." *Id.* (quotation omitted).

"The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs" or "on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266. An employer's shifting and inconsistent explanations may be evidence of pretext. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194–95 (11th Cir. 2004).

STERIS was consistent in pointing to the trust issues between Thomas and other employees and his performance issues as the reason that Thomas was terminated.  Thomas failed to meet these nondiscriminatory reasons "head on and rebut [them]." *Holland*, 677 F.3d at 1055.  In fact, he acknowledged the issues and admitted that they were serious concerns.  He did not provide any evidence that they were inaccurate or fabricated—leaving us with the Hogan 360 survey results, which corroborated the issues cited by DeThomas regarding Thomas's relationship with the other employees and the lack of trust.  The only rebuttal Thomas offered was a critique of the procedure used by DeThomas in conducting the survey.  But this did not go to the falsity of the issues reported by his colleagues regarding his performance problems.  *Furcron*, 843 F.3d at 1313–14.  Thus, Thomas provided no evidence that the reasons for his separation from STERIS were merely pretext.  We therefore need not determine whether age or disability discrimination were the real reasons for Thomas's termination.

Separately, the district court did not err by allowing STERIS to provide legitimate, non-discriminatory reasons for Thomas's separation from the company even though STERIS also maintained that he resigned and was not terminated, because the ultimate burden rested on Thomas to show that those reasons were pretexts for discrimination or retaliation.  And because he failed to do so, the court

8

also did not err in granting summary judgment to the company on his

discrimination and retaliation claims.  We affirm.

**AFFIRMED.**